127 F.3d 1061
 19 ITRD 1449
 NTN BEARING CORPORATION OF AMERICA, American Bearing
Manufacturing Corporation and NTN Corporation,
Plaintiffs-Appellants,
v.
UNITED STATES and United States Department of Commerce,
Ronald H. Brown, Secretary of Commerce, Defendants-Appellees,
and
The Timken Company, Appellee.
 No. 96-1436.
 United States Court of Appeals,
Federal Circuit
 Oct. 3, 1997.
 
 Kazumune V. Kano, Barnes, Richardson & Colburn, Chicago, IL, argued for plaintiffs-appellants. On the brief was Donald J. Unger. Of counsel was Jesse M. Gerson.
 Velta A. Melnbrencis, Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, argued for defendants-appellees. With her on the brief were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director. Of counsel on the brief were Stephen J. Powell, Chief Counsel for Import Administration, Elizabeth C. Seastrum, Senior Counsel, and Carlos A. Garcia, Attorney-Advisor, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Washington, DC.
 James R. Cannon, Jr., Stewart and Stewart, Washington, DC, argued for appellee. With him on the brief were Terence P. Stewart and William A. Fennell.
 Before NEWMAN, RADER, and SCHALL, Circuit Judges.
 
 ORDER
 
 1
 A petition for rehearing having been filed by appellants and a response thereto having been invited by the court and filed by appellees,
 
 Upon consideration thereof, it is
 
 2
 ORDERED that rehearing be granted for the limited purpose of clarifying this court's opinion.
 
 
 3
 IT IS FURTHER ORDERED that the previous opinion of the court in this appeal is withdrawn. The new opinion accompanies this order.
 
 
 4
 RADER, Circuit Judge.
 
 
 5
 This case presents yet another challenge to the Department of Commerce's (Commerce's) actions on antidumping duties for tapered roller bearings (TRBs). In this case, NTN Bearing Corporation of America, American NTN Bearing Manufacturing Corporation, and NTN Corporation (collectively, NTN) dispute Commerce's calculation of the fair market value for TRBs. Because substantial evidence supports Commerce's actions, this court affirms.
 
 I.
 
 6
 This court has documented the details of Commerce's administrative reviews of TRBs in dozens of opinions. See, e.g., NSK Ltd. v. United States, 115 F.3d 965 (Fed.Cir.1997); Koyo Seiko Co. v. United States, 92 F.3d 1162 (Fed.Cir.1996); Torrington Co. v. United States, 82 F.3d 1039 (Fed.Cir.1996); Koyo Seiko Co. v. United States, 66 F.3d 1204 (Fed.Cir.1995). Therefore, this opinion need not repeat a historical review of Commerce's investigation. However, the construction of TRBs is of particular relevance in this case. TRBs are a type of antifriction bearing made up of an inner ring (cone) and an outer ring (cup). Cups and cones sell either individually or as a preassembled "set."
 
 
 7
 Commerce's fundamental task in an antidumping investigation is to compare the United States price of imported merchandise with the value of "such or similar merchandise" in the home market, 19 U.S.C. § 1677(16) (1988),[1] and assess a duty, known as a dumping margin, for any deficiency. When Commerce identifies "such" or identical home market merchandise, the comparison between matched goods is easy and accurate. Without identical goods for value comparison, Commerce must find "similar" home market merchandise to make a proper comparison with the imports.
 
 
 8
 Commerce has established methods to determine the constructed value of "similar" merchandise in the home market. See 19 U.S.C. § 1677b(a)(2) (1988). First, Commerce "splits" sales of TRB sets sold in Japan into their component cups and cones. Next, Commerce compares the cups and cones with their imported counterparts using five physical criteria: (1) inner ring bore (inside diameter); (2) outer ring diameter; (3) width; (4) load rating; and (5) "Y" factor (measure of thrust load capability). Finally, Commerce uses a "sum of deviations" method, coupled with a twenty percent difference-in-merchandise test, to find the best matching TRB model.
 
 
 9
 After assessment of duties, NTN appealed to the Court of International Trade challenging eleven actions by Commerce as against the substantial evidence on the agency record or against the requirements of law. In April 1996, the trial court denied in all respects NTN's motion for judgment on the agency record. NTN Bearing Corp. of Am. v. United States, 924 F.Supp. 200 (C.I.T.1996). Specifically, the Court of International Trade held that Commerce's set-splitting method prevents an importer from manipulating home market calculations.
 
 
 10
 Conceding that Commerce may split sets to calculate fair market value, NTN raises only one issue on appeal, namely, the judgment upholding Commerce's splitting of certain "unsplittable" TRB sets. NTN claims that because it never separately sells the cups and cones of certain bearing models--TRB units, TRB double row models, TRB thrust bearings, TRB flanged bearings, and TRB high precision models--Commerce cannot calculate fair market value based on the constituent parts of these bearings. NTN contends that Commerce exceeded its discretion by applying its set-splitting methodology to these unsplittable sets.
 
 II.
 
 11
 This court must sustain Commerce's administrative determinations unless they are unsupported by substantial evidence or not in accordance with law. Zenith Elecs. Corp. v. United States, 77 F.3d 426, 430 (Fed.Cir.1996); 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Moreover, this court defers to Commerce's interpretation of the antidumping statute as long as it is reasonable. See Zenith Elecs., 77 F.3d at 430.
 
 
 12
 In this case, the relevant inquiry is whether the trial court properly sustained Commerce's use of its set-splitting method to split "unsplittable" sets in arriving at a value for "similar merchandise." The Tariff Act of 1930, as amended in 19 U.S.C. § 1677(16) (1988),[2] broadly defines the phrase "such or similar" as applied to goods for comparison under the antidumping test. Because it does not specify a method for matching a U.S. product with a suitable home-market product, the Act has implicitly authorized Commerce to choose a way to identify "such or similar" merchandise. Koyo Seiko Co., 66 F.3d at 1209 (testing the reasonableness of Commerce's construction of the statute).
 
 
 13
 This court has previously upheld Commerce's set-splitting and sum of deviations methods to identify "such or similar" goods for the antidumping comparison. See, e.g., id. at 1204. These earlier decisions have stressed that Commerce possesses discretion to calculate the fair market value based upon a "close-as-possible" matching of physical characteristics of separate cups and cones. This method does not require an identical match of home market and imported cups and cones. Rather, Commerce remains within its discretion when it strives to find price data for closely analogous bearing components.
 
 
 14
 The five unsplittable sets at issue always sell as sets in the Japanese market. However, as part of its efforts to match imported components with similar goods sold in the home market, Commerce split the Japanese market sets into their component cups and cones. Commerce then performed a critical physical analysis on each cup and cone, placing the Japanese components into a "pool" of potential "such or similar" home market TRB cups and cones. Commerce used this pool in its "sum of the deviations" methodology and twenty percent difference-in-merchandise test to determine the best matching TRB model components in Japan to compare with the imported cups and cones.
 
 
 15
 Because it was unable to identify "such" or identical home market goods after a reasonable search for a match to the imported parts, Commerce reasonably applied its splitting methodology to unsplittable sets sold in the home market to identify "similar" goods for a value comparison. This reasonable method was, therefore, in accord with the statute. See, e.g., id. at 1210 ("Matching 'such or similar' home-market merchandise with certain U.S. merchandise is all that the statute requires."). The antidumping act simply does not require the sale of "similar" merchandise in the same manner in both the United States and home markets. Likewise, the act does not prohibit the separation of unsplittable sets. (In fact, unsplittable sets is a bit of a misnomer. This term includes sets sold in Japan that are easily, but not currently, split, and sets that are assembled into housings that make physical splitting into components difficult.) Acceptance of NTN's argument that Commerce may not split into components products sold only as sets in the home market would allow importers to circumvent the law. An importer could manipulate Commerce's determinations by depriving it of a pool of similar products sold in the home market with which it could compare the imported goods. In the absence of a statutory prohibition against splitting these sets, Commerce's actions are reasonable.
 
 
 16
 Thus, the Court of International Trade properly upheld Commerce's actions as supported by substantial evidence and in accordance with law.
 
 COSTS
 
 17
 Each party shall bear its own costs.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 This section was amended on December 8, 1994. As both Commerce's administrative review and the Court of International Trade's adjudicatory proceeding were conducted under the statute as written prior to the 1994 amendment, we will refer to the statute in its pre-amended form. The amendment does not affect the outcome in this case
 
 
 [2]
 The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which a determination for the purposes of part II of this subtitle can be satisfactorily made:
 (A) The merchandise which is the subject of an investigation and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same person as, that merchandise.
 (B) Merchandise--
 (i) produced in the same country and by the same person as the merchandise which is the subject of the investigation,
 (ii) like that merchandise in component material or materials and in the purposes for which used, and
 (iii) approximately equal in commercial value to that merchandise.
 (C) Merchandise--
 (i) produced in the same country and by the same person and of the same general class or kind as the merchandise which is the subject of the investigation,
 (ii) like that merchandise in the purposes for which used, and
 (iii) which the administering authority determines may reasonably be compared with that merchandise.
 Section 1677(16) has been revised, inter alia, by the substitution of "foreign like product" for "such or similar merchandise" and the deletion of the phrase "which is the subject of an investigation" from subsections (A) and (B). 19 U.S.C. § 1677(16) (1994).