180 F.3d 1370
 SKF USA INC. and SKF GmbH, Plaintiffs-Appellants,
v.
INA WALZLAGER SCHAEFFLER KG and Ina Bearing Company, Inc., Plaintiffs,
and
Fag Kugelfischer Georg Schaefer AG and Fag Bearings
Corporation, Plaintiffs,
v.
United States, Defendant-Appellee,
and
NTN Bearing Corporation of America and NTN Kugellagerfabrik
(Deutschland) GmbH, Defendants,
v.
The Torrington Company, Defendant-Appellee.
 Nos. 98-1139, 98-1140.
 United States Court of Appeals,
Federal Circuit.
 Decided June 10, 1999.
 
 Appeal from the United States Court of International Trade in consolidated Court No. 95-03-00318, Senior Judge Nicholas Tsoucalas.
 Alice A. Kipel, Steptoe & Johnson LLP, of Washington, D.C., argued for plaintiffs-appellants. With her on the brief was Herbert C. Shelley.
 Velta A. Melnbrencis, Assistant Director, Civil Division, Department of Justice, of Washington, D.C., argued for defendant-appellee. With her on the brief was David M. Cohen, Director. Of counsel on the brief were Stephen J. Powell, Chief Counsel for Import Administration, Berniece A. Browne, Senior Counsel, and Mark A. Barnett, Attorney, Office of the Chief Counsel for Import Administration, Department of Commerce, of Washington, D.C. Of counsel was Myles S. Getlan, Department of Commerce, of Washington, D.C.
 Wesley K. Caine, Stewart and Stewart, of Washington, D.C., argued for defendant-appellee The Torrington Company. With him on the brief was Terence P. Stewart. Of counsel on the brief were Geert M. De Prest and Lane S. Hurewitz.
 Before LOURIE, Circuit Judge, SMITH, Senior Circuit Judge, and GAJARSA, Circuit Judge.
 SMITH, Senior Circuit Judge.
 
 
 1
 This case arises out of a United States Department of Commerce ("Commerce") antidumping administrative review of antifriction bearing ("AFB") sales. SKF GmbH is a manufacturer and exporter of AFBs in Germany, and SKF USA, Inc. is a United States importer of German AFBs (collectively "SKF"). SKF appeals from two decisions of the United States Court of International Trade, which sustained Commerce's denial of SKF's billing adjustment two and cash discounts. We agree that Commerce properly disallowed SKF's billing adjustment two and cash discounts because the claimed adjustments were not limited to merchandise within the scope of the antidumping order. We therefore affirm.
 
 Background
 
 2
 The United States' antidumping laws penalize the sale of a foreign product in the United States at a price that is lower than the product's fair value in the home country. The purpose of the antidumping laws is to prevent foreign manufacturers from injuring domestic industries by selling their products in the United States at prices below that which the foreign manufacturers charge for the same products in their home markets. See NTN Bearing Corp. of America v. United States, 127 F.3d 1061, 1063 (Fed.Cir.1997); Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed.Cir.1995).[1]
 
 
 3
 Under 19 U.S.C. § 1673 (1994), Commerce is given the authority to determine whether dumping has occurred and, where dumping is found, Commerce is authorized to impose an antidumping duty equal to the "dumping margin."[2] The "dumping margin" equals the amount by which the foreign market value ("FMV") exceeds the United States price ("USP") for the merchandise. See Koyo Seiko Co. v. United States, 36 F.3d 1565, 1567 (Fed.Cir.1994). "Foreign market value and United States price represent prices in different markets affected by a variety of differences in the chain of commerce by which the merchandise reached the export or domestic market. Both values are subject to adjustment in an attempt to reconstruct the price at a specific, 'common' point in the chain of commerce, so that value can be fairly compared on an equivalent basis." Smith-Corona Group v. United States, 713 F.2d 1568, 1572-73 (Fed.Cir.1983).
 
 
 4
 In the instant case, SKF participated as a respondent in Commerce's review of AFB imports between May 1, 1992 and April 30, 1993. SKF submitted information on its sales of AFBs in the German home market during the period of review, including its sales prices and adjustments to those prices. In the Final Results, Commerce disallowed two adjustments, known as billing adjustment two and cash discounts, that SKF claimed in calculating its FMV. See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, et al.; Final Results of Antidumping Duty Administrative Reviews, and Revocation in Part of Antidumping Duty Orders, 60 Fed.Reg. 10900, 10931-32 (Feb. 28, 1995) ("Final Results").
 
 
 5
 In rejecting SKF's adjustments, Commerce relied upon Torrington Co. v. United States, 818 F.Supp. 1563 (Ct. Int'l Trade 1993) ("Torrington CIT "), wherein the Court of International Trade held that Commerce cannot calculate the FMV of merchandise that is within the scope of an antidumping review ("in-scope" merchandise) using a methodology that includes discounts, rebates, and price adjustments on merchandise outside the scope of the antidumping review ("out-of-scope" merchandise). See Final Results, 60 Fed.Reg. at 10931-32 (Comment 10, 11). See also Torrington CIT, 818 F.Supp. at 1578-79.[3] Commerce denied SKF the requested adjustments because they were not reported in a transaction-specific manner and therefore were not limited to merchandise within the scope of the antidumping review. See Final Results, 60 Fed.Reg. at 10931-32 (Comment 10, 11).
 
 
 6
 SKF filed a complaint with the Court of International Trade alleging among other things that Commerce erred in its calculation of the FMV by disallowing adjustments for SKF's billing adjustment two and cash discounts. See INA Walzlager Schaeffler KG v. United States, 957 F.Supp. 251 (Ct. Int'l Trade 1997). SKF claimed that all of the adjustments should be treated as "direct" and allowed as adjustments to the FMV. Id. at 268. Commerce had rejected that contention, however, because SKF failed to show that the allocated price adjustments at issue were calculated solely on the basis of merchandise under review. Id.
 
 
 7
 Between the filing of the complaint and the Court of International Trade's decision, this court handed down its decision in Torrington Co. v. United States, 82 F.3d 1039 (Fed.Cir.1996) ("Torrington ").[4] This court affirmed Torrington CIT, although on other grounds; specifically, that Commerce may not treat direct selling expenses as indirect expenses under the exporter's sale price ("ESP") offset regulation. See Torrington, 82 F.3d at 1050-51. The Torrington court therefore did not address the in-scope/out-of-scope distinction of Torrington CIT. See id. at 1051 n. 19.
 
 
 8
 In its decision in this case, the Court of International Trade sustained Commerce's denial of SKF's billing adjustment two and cash discounts but did so on slightly different grounds than those relied on by Commerce. See INA Walzlager Schaeffler KG, 957 F.Supp. at 269 ("adjustments and discounts which are actually direct expenses may not be treated as indirect expenses pursuant to the ESP offset provision"). In affirming Commerce's denial of SKF's price adjustments, the Court of International Trade combined the rationales of Torrington CIT and Torrington. Specifically, the court relied on Torrington to determine that the adjustments at issue are direct expenses, and therefore cannot be treated as indirect expenses; the court relied on the in-scope/out-of-scope rule, articulated in Torrington CIT and other cases, for the proposition that an allowable adjustment cannot include merchandise outside the scope of the antidumping order. The case was remanded to Commerce on other issues. SKF appeals to this court from the decisions of the Court of International Trade in INA Walzlager Schaeffler KG v. United States, 957 F.Supp. 251 (Ct. Int'l Trade 1997), and INA Walzlager Schaeffler KG v. United States, Slip Op. 97-141 (Ct. Int'l Trade Sept. 29, 1997) (appeal after remand), which affirmed Commerce's remand results and dismissed the case.
 
 
 9
 We affirm the decisions of the Court of International Trade on the basis of the in-scope/out-of-scope rule articulated in Torrington CIT, and applied by Commerce in disallowing SKF's billing adjustments in this case.
 
 Jurisdiction and Standard of Review
 
 10
 This court has appellate jurisdiction based on 28 U.S.C. § 1295(a)(5) (1994), which empowers it to review final decisions of the Court of International Trade. The Court of International Trade's jurisdiction was based on 19 U.S.C. § 1516a(a)(2) (1994), which empowers that court to review final antidumping determinations of the Department of Commerce, including antidumping determinations under 19 U.S.C. § 1675 (1994).
 
 
 11
 This court reviews a decision of the Court of International Trade involving an administrative antidumping determination " 'by applying anew the statute's express judicial review standard.' " U.H.F.C. Co. v. United States, 916 F.2d 689, 696 (Fed.Cir.1990) (quoting Atlantic Sugar, Ltd. v. United States, 744 F.2d 1556, 1559 n. 10 (Fed.Cir.1984)). An administrative antidumping determination must be upheld unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1994). " 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support such a conclusion.' " Aimcor, Alabama Silicon, Inc. v. United States, 154 F.3d 1375, 1378 (Fed.Cir.1998) (quoting Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed.Cir.1984)).
 
 Analysis
 
 12
 The antidumping laws provide that a foreign producer engages in dumping to the extent that the USP is less than the FMV of the same or similar merchandise. See 19 U.S.C. § 1673 (1994) (an antidumping duty represents the amount by which the FMV exceeds the USP for the merchandise).[5] Commerce initially determines whether articles are being sold in the United States at less than fair value. See 19 U.S.C. § 1673b(b)(1) (1994). If such determination is in the affirmative, Commerce includes in the determination the estimated average amount by which the FMV exceeds the USP. Id. Thereafter, Commerce and the International Trade Commission make a final determination whether the merchandise which was the subject of the investigation is being, or is likely to be, sold in the United States at less than its fair value, to the detriment of a domestic industry. See 19 U.S.C. §§ 1673d(a), 1673d(b) (1994). If such determination is in the affirmative, Commerce then issues an antidumping duty order. See 19 U.S.C. § 1673d(c)(2) (1994). The order imposes an antidumping duty equal to the amount by which the FMV exceeds the USP for merchandise covered by the order. See 19 U.S.C. § 1673e(a) (1994). Upon each anniversary of the antidumping duty order, dumping margins may be reassessed through an administrative review if an interested party makes a request. See 19 U.S.C. § 1675(a) (1994).
 
 
 13
 In determining whether goods are being sold at less than fair value, Commerce may allow adjustments to the FMV for direct selling expenses based on three criteria: (1) differences between quantities sold in the foreign and domestic markets; (2) differences in the circumstances of sales; and (3) differences in physical characteristics of the product. See Torrington Co. v. United States, 82 F.3d 1039, 1048 (Fed.Cir.1996).[6] The FMV may also be adjusted for indirect selling expenses through the ESP offset. See Torrington, 82 F.3d at 1049 n. 13.[7]
 
 
 14
 When this procedure was followed in the instant case, Commerce found that SKF's billing adjustment number two and cash discounts were in the nature of direct expenses because they were allocated adjustments that were not granted as a fixed and constant percentage of sale. SKF's adjustments were granted after sale, apparently to correct billing errors (billing adjustment number two) or to lower the price for a particular customer (cash discounts). Commerce disallowed SKF's billing adjustment number two and cash discounts because they were not reported in a transaction-specific manner and therefore were not limited to merchandise within the scope of the antidumping review. See Final Results, 60 Fed.Reg. at 10931-32 (Comment 10, 11).
 
 
 15
 The Court of International Trade agreed with Commerce's characterization of SKF's billing adjustment number two and cash discounts as being in the nature of direct expenses, and agreed that SKF's failure to report them on a transaction-specific basis precluded treatment of the adjustments as direct expenses. See INA Walzlager, 957 F.Supp. at 269. The court also affirmed Commerce's refusal to treat the adjustments as indirect expenses, because under Torrington adjustments and discounts which are actually direct expenses may not be treated as indirect expenses pursuant to the ESP offset provision. See INA Walzlager, 957 F.Supp. at 269.
 
 The In-Scope/Out-of-Scope Rule
 
 16
 The in-scope/out-of-scope rule relied on by Commerce in this case was clearly articulated by the Court of International Trade in Torrington CIT. See 818 F.Supp. at 1578 ("Merchandise which is outside the scope of an antidumping duty order cannot be used in the calculation of antidumping duties."). In that case, the foreign manufacturer claimed adjustments to FMV for certain post-sale price adjustments ("PSPAs") and rebates that were granted as an ordinary part of its business but which were not tracked on a product-specific basis. The adjustments at issue were not allocated on a product-specific basis and "no effort was made to eliminate PSPAs and rebates paid on out of scope merchandise." Id. Thus, PSPAs and rebates that had been granted on out-of-scope merchandise had been included in calculating the claimed adjustments.
 
 
 17
 Commerce allowed the claimed adjustments, treating them as indirect expenses. Id. at 1577. The Court of International Trade reversed, on the basis that "[m]erchandise which is outside the scope of an antidumping duty order cannot be used in the calculation of antidumping duties." Id. at 1578.
 
 
 18
 We agree with the Torrington CIT court that antidumping duties must be calculated based solely on merchandise within the scope of the antidumping duty order. This requirement is mandated by statute: "If a class or kind of foreign merchandise is being sold in the United States at less than its fair value, and [a domestic industry is injured by the dumping], then there shall be imposed upon such merchandise an antidumping duty in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise." 19 U.S.C. § 1673 (1994) (emphasis added). The statutory language thus requires that the antidumping duty be calculated on the basis of the difference between the FMV and the USP for "the merchandise;" i.e., the "foreign merchandise [which] is being sold in the United States at less than its fair value." Id. Price adjustments granted on goods outside the scope of the antidumping duty order are irrelevant to calculating the FMV of goods within the scope of the antidumping duty order; they simply play no part in determining the FMV of the in-scope goods themselves. The statutory language therefore precludes the use of price adjustments granted on sales of goods outside the scope of the antidumping duty order in calculating the FMV of goods within the scope of the antidumping duty order.
 
 
 19
 This interpretation of 19 U.S.C. § 1673 is consistent with that of other courts that have considered the statute. See, e.g., Badger-Powhatan v. United States, 633 F.Supp. 1364, 1370 (Ct. Int'l Trade 1986). The Badger-Powhatan court interpreted "the merchandise" referred to at the end of the above-quoted statutory passage to mean the merchandise being sold at less than its foreign market value and which is causing domestic injury. Id. The court concluded that "the antidumping duty actually imposed should be based, as far as is possible, on the [dumping] margin for the merchandise that is actually subject to the duty;" in other words, merchandise within the scope of the antidumping duty order. Id.
 
 
 20
 In addition, a rule requiring direct price adjustments to relate exclusively to in-scope merchandise is necessary in order to allow Commerce to calculate the FMV as accurately as possible to determine whether dumping has indeed occurred. To allow adjustments to FMV for direct price adjustments encompassing both in-scope and out-of-scope goods would have the effect of averaging prices, diluting some and inflating others, and thereby reduce the accuracy of Commerce's dumping determinations.
 
 
 21
 SKF argues that this court has accepted allocations of rebates on in-scope and out-of-scope merchandise in the past, citing Smith-Corona Group v. United States, 713 F.2d 1568 (Fed.Cir.1983). We perceive no conflict between Smith-Corona and our holding today. In Smith-Corona, this court approved of a method of calculating an adjustment to foreign market value in which the total rebates paid by the manufacturer (on both in-scope and out-of-scope goods) was divided by the percentage of the rebated sales which represented sales of in-scope goods. See id. at 1579-1580. This calculation "yield[ed] the rebate amount per unit allowed as an adjustment to foreign market value." Id. at 1580. The Smith-Corona court noted that "[d]espite the necessity of apportionment calculations to unravel the rebate transactions, the cost of the rebates can be directly correlated with specific merchandise using verified cost and sales information." Id. Since the claimed adjustments could be directly correlated with specific merchandise, there was no question in Smith-Corona of adjustments on merchandise outside the scope of an antidumping duty order being used in the calculation of antidumping duties. The holding of Smith-Corona is in no way inconsistent with the in-scope/out-of-scope rule that we adopt today.
 
 Application of the Rule
 
 22
 In this case, SKF requested an adjustment to FMV for its billing adjustment two and cash discounts. SKF reported to Commerce that these post-sale price adjustments generally related to multiple invoices and therefore could not be reported in a transaction-specific manner. See Final Results, 60 Fed.Reg. at 10931-32. Commerce denied the adjustments because "SKF did not demonstrate that [either] adjustment[ ] pertained to subject merchandise only," id. at 10932, in that "SKF provided no means of identifying and segregating billing adjustments paid on non-scope merchandise." Id.
 
 
 23
 The party seeking a direct price adjustment bears the burden of proving entitlement to such an adjustment. See Fujitsu General Ltd. v. United States, 88 F.3d 1034, 1040 (Fed.Cir.1996). Commerce determined in this case that SKF had not carried its burden, and its determination must be upheld unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1994); Aimcor, Alabama Silicon, Inc. v. United States, 154 F.3d 1375, 1378 (Fed.Cir.1998).
 
 
 24
 We agree with Commerce and the Court of International Trade that the law requires price adjustments to be calculated solely on the basis of merchandise within the scope of an antidumping duty order. Therefore, Commerce applied the correct legal standard in requiring SKF to show that the claimed adjustments pertained to subject merchandise only. SKF did not do so, and Commerce appropriately denied the requested adjustments.[8]
 
 
 25
 SKF does not dispute that the claimed adjustments are not limited to merchandise within the scope of the antidumping duty order, but argues that Commerce's denial of the requested adjustments is contrary to law, because the legal basis of its decision, and the basis relied on by the Court of International Trade on appeal, "represent rules judicially imposed by the CIT, that are not mandated by the antidumping law, and that misapply decisions of this Court." However, for the reasons stated above, we conclude that Commerce's denial of SKF's billing adjustment two and cash discounts rests on a correct reading of the law. Thus, and since SKF has pointed to no evidence showing that the adjustments were limited to in-scope merchandise, Commerce's decision is supported by substantial evidence and not contrary to law. We affirm the decision of the Court of International Trade upholding Commerce's denial of these adjustments.
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 The antidumping laws were amended by the Uruguay Round Agreements Act, Pub.L. No. 103-465, 108 Stat. 4809 ("URAA"). The amendments, however, do not apply to administrative reviews initiated before January 1, 1995. See Zenith Electronics Corp. v. United States, 77 F.3d 426, 428 n. 1 (Fed.Cir.1996). Because this case involves administrative reviews initiated before January 1, 1995, we use the antidumping laws in effect prior to the URAA. For simplicity, however, we use the present tense when referring to these statutes
 
 
 [2]
 See 19 U.S.C. § 1673 (1994):
 If--
 (1) the administering authority determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and
 (2) [the International Trade Commission determines that domestic industry is injured by the dumping], then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise.
 
 
 [3]
 The Torrington CIT decision arose out of a separate administrative review and is not procedurally related to this appeal
 
 
 [4]
 Torrington was the appeal of the Torrington CIT decision
 
 
 [5]
 The USP is calculated pursuant to 19 U.S.C. § 1677a (1994). The USP is calculated by one of two methods: purchase price or exporter's sales price. Id. On the other side of the scale, FMV is calculated pursuant to 19 U.S.C. § 1677b (1994) by one of three methods: (1) home market sales, (2) third country sales, or (3) constructed value
 
 
 [6]
 Direct selling expenses "are expenses which vary with the quantity sold," Zenith Elecs. Corp. v. United States, 77 F.3d 426, 431 (Fed.Cir.1996), or that are "related to a particular sale." Torrington v. United States, 68 F.3d 1347, 1353 (Fed.Cir.1995)
 
 
 [7]
 Indirect selling expenses " 'are those that do not vary with the quantity sold,' " Zenith Elecs., 77 F.3d at 431 (citations omitted), or that are "not related to a particular sale." Torrington, 68 F.3d at 1353. Commerce may deduct indirect selling expenses from the FMV under the ESP offset. Id. at 1356
 
 
 [8]
 SKF argues that this court's holding in Torrington, 82 F.3d at 1051, that direct expenses could not be treated as indirect expenses, fundamentally altered Commerce's policy regarding price adjustments. Therefore, SKF asserts that the Court of International Trade should have remanded the case to Commerce for reconsideration in light of Torrington. We see no error in the Court of International Trade's handling of this case. As we have explained, Commerce applied the correct legal standard to the claimed adjustments, even without the benefit of the Torrington decision