**Slip Op. 99-56**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

|  |  |
|---|---|
| SKF USA INC., SKF FRANCE S.A. and SARMA, | : |
| Plaintiffs, | : |
| v. | : Consolidated Court No. 97-01-00054 |
| THE UNITED STATES, | : |
| Defendant, | : |
| THE TORRINGTON COMPANY, | : |
| Defendant-Intervenor. | : |

Plaintiffs, SKF USA Inc., SKF France S.A. and Sarma (collectively "SKF"), move pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record challenging certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final results of the administrative review, entitled <u>Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews</u> ("<u>Final Results</u>"), 61 Fed. Reg. 66,472 (Dec. 17, 1996). Specifically, SKF claims Commerce erred in: (1) disregarding SKF's negative home market billing adjustment in the calculation of foreign market value ("FMV") while retaining positive billing adjustment values; and (2) including in SKF's U.S. sales database sample transactions for which SKF received no consideration.

**Held:** SKF's motion for judgment on the agency record is granted in part and denied in part. Commerce's treatment of SKF's home market billing adjustments is affirmed. The Court remands this case to Commerce to exclude from SKF's U.S. sales database any samples for which SKF received no consideration.

[SKF's motion for judgment on the agency record granted in part and denied in part.]

Dated: June 29, 1999

Steptoe & Johnson (Herbert C. Shelley and Alice A Kipel) for plaintiffs.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Velta A. Melnbrencis, Assistant Director); of counsel: Mark A Barnett, Attorney-Advisor, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, Wesley K. Caine, Geert De Prest and Lane S. Hurewitz) for defendant-intervenor.

## OPINION

**TSOUCALAS, Senior Judge:** Plaintiffs,[1] SKF USA Inc., SKF France S.A. and Sarma (collectively "SKF"), move pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record challenging certain aspects of the Department of Commerce, International Trade Administration's ("Commerce") final results of the administrative review, entitled Antifriction Bearings (Other

---

[1] This consolidated case previously involved a separate Rule 56.2 motion (Court No. 97-01-00094) filed by The Torrington Company ("Torrington"), in which SNR Roulements intervened as defendant-intervenor. Torrington's motion was consolidated with SKF's motion. See SKF USA Inc. v. United States, Court No. 97-01-00054, (CIT docketed Apr. 25, 1997) (order consolidating, inter alia, SKF's motion (Court No. 97-01-00054) with Torrington's motion under lead case number 97-01-00054). Thereafter, upon Torrington's consent motion, Torrington's cause of action was severed and dismissed. See SKF USA Inc. v. United States, Court No. 97-01-00054, (CIT docketed Mar. 30, 1998) (order severing and dismissing Torrington's case, Ct. No. 97-01-00094).

Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Singapore, Sweden, and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews ("Final Results"), 61 Fed. Reg. 66,472 (Dec. 17, 1996).

## Background

The administrative review at issue[2] encompasses antifriction bearings ("AFBs") (other than tapered roller bearings) and parts thereof, imported from France during the review period covering May 1, 1993 through April 30, 1994. Commerce published the preliminary results of the subject review on December 7, 1995. See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Japan, Singapore, Sweden, Thailand, and the United Kingdom; Preliminary Results of Antidumping Duty Administrative Reviews, Partial Termination of Administrative Reviews, and Notice of Intent to Revoke Order, 60 Fed. Reg. 62,817. On December 17, 1996, Commerce published the Final Results at issue. See 61 Fed. Reg. 66,472.

---

[2] Because this administrative review was initiated prior to January 1, 1995, the applicable law is the antidumping statute as it existed prior to the amendments made pursuant to the Uruguay Round Agreements Act, Pub. L. No. 103-465, 108 Stat. 4809 (1994). See Torrington Co. v. United States, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

SKF claims Commerce erred in the Final Results by: (1) using SKF's positive home market billing adjustment in the calculation of foreign market value ("FMV"), while disregarding SKF's corresponding negative home market billing adjustment in the FMV calculations; and (2) including sample transactions for which SKF received no consideration in SKF's U.S. sales database when calculating United States Price ("USP").

## Discussion

This Court has jurisdiction in this case pursuant to 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." Timken Co. v. United States, 12

CIT 955, 962, 699 F. Supp. 300, 306 (1988), aff'd, 894 F.2d 385 (Fed. Cir. 1990).

1.   Disparate Treatment of Upward and Downward Home Market Billing Adjustments

The amount of an antidumping duty, imposed to correct the effects of dumping, is determined by comparing FMV[3] to USP. See 19 U.S.C. § 1677b (1988). In making this comparison, various adjustments are made to both sides of the calculation for certain costs, expenses and duties, pursuant to statute. The "absolute dumping margin" is the amount by which FMV exceeds USP after the appropriate upward and downward adjustments are made, pursuant to statutory provisions and Commerce's regulations. See Zenith Elecs. Corp. v. United States, 14 CIT 831, 834, 755 F. Supp. 397, 403 (1990), aff'd, 988 F.2d 1573 (Fed. Cir. 1993). These adjustments to FMV include post-sale price adjustments or "billing adjustments" made to home market sales which directly affect the accuracy of reported prices and, hence, of the dumping analysis. See, e.g., Sugiyama Chain Co. v. United States, 19 CIT 328, 335, 880 F. Supp. 869, 874 (1995).

---

[3] In this case, Commerce calculated FMV for SKF based on home market sales.

In this case, in the French home market, SKF reported two types of billing adjustments in its questionnaire response: billing adjustment number one and billing adjustment number two. Billing adjustment number one represented credits or debits attributable to specific sales that were reported on a transaction-specific and product-specific basis.[4] See SKF's Mem. Supp. Mot. J. Agency R. at 5. Billing adjustment number two represented debits and credits related to multiple invoices, multiple invoice lines, or multiple products, and applied only to certain French home market sales.[5]

SKF did not report billing adjustment number two on a transaction-specific basis, or on a fixed and constant percentage of sales for all transactions as Commerce requires. See Final Results, 61 Fed. Reg. at 66,499. Instead, SKF calculated and reported the adjustment using customer-specific allocations. SKF asserts that the adjustments in question cannot be tied to a specific transaction because an affiliate may issue a credit or debit note related to multiple invoices, products or invoice lines. See SKF's Mem. Supp. J. Agency R. at 20.

---

[4] Billing adjustment one is not at issue in this case.

[5] The home market sales were made by Steyr Wälzlager ("Steyr") during the period of review. Steyr is an Australian sales company that is related to the French SKF companies through a common parent, AB SKF. See Final Results, 61 Fed. Reg. at 66,487.

In the Final Results, Commerce rejected SKF's methodology for reporting billing adjustment number two as a direct adjustment to the price of SKF's home market sales.  See 61 Fed. Reg. at 66,498. However, rather than rejecting SKF's billing adjustment number two in its entirety, Commerce retained SKF's positive billing adjustment values (increasing dumping margins) while rejecting the negative billing adjustment values (which would have reduced the dumping margins).  Id. at 66,499.

SKF's contentions objecting to Commerce's treatment of billing adjustment number two are two-fold.  First, SKF argues that Commerce should have accepted all of SKF's billing adjustments, both positive and negative, as reported by SKF.  Second, SKF contends that Commerce erred by engaging in disparate treatment of positive and negative values reported under billing adjustment number two.  In the Final Results, Commerce determined the following:

> [W]e have not treated improperly allocated HM [home market] price adjustments as [indirect selling expenses], but have instead disallowed negative (downward) adjustments in their entirety. We have included positive (upward) HM price adjustments (e.g., positive billing adjustments that increase the final sales price) in our analysis.  The treatment of positive billing adjustments as direct adjustments is appropriate because disallowing such adjustments would provide an incentive to report positive billing adjustments on an allocated (e.g., customer-specific) basis in order to minimize their effect on the margin calculations.  That is, if we were

  to disregard positive billing adjustments, which would be
  upward adjustments to FMV, respondents would have no
  incentive to report these adjustments on a transaction-
  specific basis, as requested.

Id. at 66,498.

  Commerce explained that it established a general policy of making direct adjustments to FMV for discounts, rebates and price adjustments. Pursuant to this policy, Commerce makes direct adjustments to FMV if the discounts, rebates, or price adjustments are reported only on (1) a transaction-specific basis, or (2) if they were granted as a fixed and constant percentage of sales price. If the price adjustments are otherwise allocated or reported, Commerce generally disallows claims for those price adjustments. Id.

  Commerce claims that it applied this policy to SKF and, therefore, denied any negative price adjustments decreasing FMV. However, Commerce included SKF's positive adjustments asserting that this was consistent with the principle that a party should not benefit from its improper reporting. Def.'s Partial Opp'n to Mot. J. Agency R. at 5.

  Torrington supports Commerce's selective response to the billing adjustments and asserts that Commerce's action conforms with its general practice regarding reporting failures. Citing INA

Walzlager Schaeffler KG v. United States, 21 CIT ___, ___, 957 F. Supp. 251, 265-68 (1997), Torrington further contends that Commerce's action is consistent with this Court's decision affirming a similarly selective response in connection with billing adjustments in a prior review. Torrington's Opp'n to Mot. J. Agency R. at 13.

In its reply, SKF argues that, contrary to the positions of Torrington and Commerce, there is no "positive billing adjustment" and no "negative billing adjustment." Rather, SKF contends that billing adjustment number two is a single adjustment that may, in any given period and for any given customer, be either a negative value or a positive value. Hence, SKF states that it treats negative and positive billing adjustments in a like fashion and argues that Commerce should use the adjustments in the same manner in its margin calculations. SKF's Reply Mem. Supp. Mot. J. Agency R. at 2-3. Further, SKF contends that Commerce incorrectly assumes that billing adjustment number two can be linked to a particular transaction or a fixed constant percentage of all transactions reported. According to SKF, the inability to report on a transaction-specific basis is due to the nature of the adjustment and not to SKF's reporting failure. Id. Therefore, SKF urges that the selective use of positive values and rejection of negative

values was done in a punitive and result-oriented manner.   See SKF's Mem. Supp. Mot. J. Agency R. at 2.

Commerce adjusts FMV and USP for discounts, rebates, and other billing adjustments pursuant to 19 U.S.C. §§ 1677a, 1677b (1988), which require Commerce to determine what price was actually charged for subject merchandise.   FMV can be adjusted for direct or indirect expenses.   Direct selling expenses vary with the quantity sold, see Zenith Elecs. Corp. v. United States, 77 F.3d 426, 431 (Fed. Cir. 1996), or are specifically "related to a particular sale." Torrington, 68 F.3d at 1353.   In the instant case, none of the parties disputes the direct nature of the adjustments to FMV.

It is well-established that Commerce's decision to deny a direct adjustment to FMV is reasonable and proper if the adjustment sought is not reported in either a transaction-specific basis or as a fixed and constant percentage of the sales price of all transactions for which it was reported.   See SKF USA Inc. v. United States, 19 CIT 625, 633, 888 F. Supp. 152, 159 (1995); SKF USA Inc. v. United States, 19 CIT 79, 875 F. Supp. 847, 86, 853 (1995); SKF USA Inc. v. United States, 19 CIT 54, 65, 874 F. Supp. 1395, 1405 (1995).   "The party seeking a direct price adjustment bears the burden of proving entitlement to such an adjustment." SKF USA Inc., __F.3d at __, 1999 U.S. App. LEXIS 11991, at *18-19,

1999 WL 378537, at *6 (Fed. Cir. June 10, 1999) (citing Fujitsu General Ltd. v. United States, 88 F.3d 1034, 1040 (Fed. Cir. 1996)). Because the improper reporting made it impossible for Commerce to determine if the claimed adjustment pertained to subject merchandise, Commerce determined that SKF had not met its burden. Commerce, therefore, properly declined to make the downward adjustments because of SKF's failure to tie the expenses to specific transactions or products. See Torrington, 82 F.3d at 1050-51.

The gravamen of this dispute is therefore whether Commerce properly applied the upward billing adjustments to FMV, while rejecting the downward billing adjustments. Under 19 U.S.C. § 1677e(b), if Commerce is unable to verify the accuracy of the information submitted in a review, it has the authority to apply best information available ("BIA") to prevent a respondent from benefitting from its own reporting failure. In particular, Commerce has the discretion to resort to BIA when it believes that the respondent, through refusal or inability, is not complying with the investigators. See 19 U.S.C. 1677e(c) ("[W]henever a party or any other person refuses or is unable to produce information requested in a timely manner and in the form required, or otherwise significantly impedes an investigation, [Commerce shall] use the

best information available."); see also Ad Hoc Comm. of AZ-NM-TX-
FL Producers of Gray Portland Cement v. United States, 18 CIT 906,
912, 865 F. Supp. 857, 863 (1994) ("Commerce lacks subpoena power,
but the BIA provision is a means of obtaining compliance with
Commerce's requests for information.") (citing Rhone Poulenc, Inc.
v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990). Although
Commerce did not make its determination regarding the billing
adjustments in the Final Results in the context of a BIA analysis,
Commerce's treatment of SKF's billing adjustments is consistent
with the BIA laws and the spirit behind them.

In essence, SKF's main argument is that, because Commerce
chose to accept SKF's upward adjustments to FMV, it must
accordingly accept SKF's downward adjustments. In the alternative,
SKF argues that Commerce should have rejected the positive
adjustments since it rejected the negative adjustments. These
propositions, however, are not reflected in the law. There is no
requirement that Commerce treat modifications that increase
respondent's dumping margin and adjustments that decrease the
margin in the same manner. Rather, the law supports the opposite
conclusion. See SSAB Svenskt Stal AB v. United States, 21 CIT ___,
___, 976 F. Supp. 1027, 1032 (1997) (upholding Commerce's selection
of the highest packing costs reported by respondent for U.S. sales

with no accompanying deduction of packing expenses for FMV); see also INA Walzlager Schaeffler KG v. United States, 21 CIT ___, ___, 957 F. Supp. 251, 265-68 (1997) (remanding to Commerce to deny negative billing adjustments with no corresponding instructions regarding positive adjustments), opinion after remand, 1997 Ct. Intl. Trade LEXIS 147, 1997 WL 614300, Slip Op. 97-141 (Sept. 29, 1997), aff'd sub nom, SKF USA Inc. v. INA Walzlager Schaeffler KG, __F.3d__, 1999 U.S. App. LEXIS 11991, 1999 WL 378537 (Fed. Cir. June 10, 1999).  This is particularly true when Commerce is given data that is not responsive to its request for information, or when the respondent submits information in an improper form.

In INA, for example, Commerce treated certain home market expenses, including negative billing adjustments reported by a respondent on a customer-specific basis, as indirect billing expenses.  Commerce treated positive billing adjustments as direct expenses to be deducted from FMV.  Id. at 265.  The Court held that negative home market adjustments could not be treated as indirect expenses, because by their very nature, the adjustments constituted direct expenses.  Id. at 267.  The Court therefore remanded to Commerce to deny any adjustment to FMV for the respondent's negative billing adjustment because the adjustment was improperly reported.  Id. at 268.

INA held that both positive and negative adjustments have the same nature, i.e., both types of adjustments are direct adjustments to FMV and must be reported in a particular manner. Although INA did not expressly address the issue of disparate treatment of positive and negative billing adjustments, the Court's order in INA remanding to Commerce to deny adjustment's to FMV for respondent's negative billing adjustments only, clearly indicates the Court's position that the law does not require either a blanket denial or a uniform acceptance of upward and downward billing adjustments to FMV.

SKF mistakenly relies on U.H.F.C. Co. v. United States, 916 F.2d 689 (Fed. Cir. 1990), to support its assertion that a respondent's inability to provide information in the form requested precludes the application of a BIA approach. See SKF's Mem. Supp. J. Agency R. at 22-23. In U.H.F.C., the court found that Commerce incorrectly resorted to BIA when applying price adjustments to a respondent that did not supply the requested cost of production ("COP") information. However, in U.H.F.C., the court determined that Commerce was requesting, and was in fact penalizing respondent for not providing, information that was irrelevant to its calculations. See U.H.F.C., 916 F.2d at 701 (holding that Commerce erroneously used BIA based on respondent's failure to submit the

product's COP data, when that data was not relevant in the adjustment calculations).

Similarly, SKF misreads <u>Koyo Seiko Co. v. United States</u>, 92 F.3d 1162 (Fed. Cir. 1996).  SKF asserts that <u>Koyo</u> prohibits the disparate treatment of billing adjustments in FMV calculations.  SKF's Mem. Supp. Mot. J. Agency R. at 19.  However, in <u>Koyo</u>, unlike the present case, Commerce's authority to use BIA was not implicated since Commerce did not dispute that the deduction sought[3] was properly reported and supported in the record.  <u>Koyo</u>, 92 F.3d at 1167.

Finally, SKF itself indicated that there were positive billing adjustments which increased the dumping margin.  Commerce exercised its discretion to grant the adjustment as reported.  Prohibiting Commerce from granting the upward adjustment in this case, especially when the adjustment was reported by the respondent, would limit Commerce's ability to obtain the information it requires in the appropriate form.  The Court finds Commerce's application of billing adjustments to be a proper exercise of its authority to grant or deny adjustments.

---

[3] Specifically, in <u>Koyo</u>, the respondent sought an adjustment to USP to correspond to a deduction of indirect selling expenses from FMV.

2.    <u>Inclusion of Sample Transactions Unsupported by Consideration</u>
      <u>in SKF's U.S. Sales Database</u>

During this review, Commerce included in SKF's U.S. sales database zero-priced sample transactions.  SKF argues that this case should be remanded to Commerce with instructions, pursuant to <u>NSK Ltd. v. United States</u>, 115 F.3d 965 (Fed. Cir. 1997), to exclude SKF's zero-value U.S. transactions from the dumping margin calculations.  SKF's Mem. Supp. Mot. J. Agency R. at 37.

Commerce agrees that a remand under <u>NSK</u> is proper and that, on remand, it should exclude sample transactions for which no consideration was given in its computation of SKF's U.S. sales. Def.'s Partial Opp'n to Mot. J. Agency R. at 3.

Although Torrington concedes that a remand may be appropriate in light of <u>NSK</u>, Torrington argues that SKF failed to demonstrate that the transactions in question lacked "consideration" as defined by <u>NSK,</u> and that further factual inquiry is necessary. Torrington's Opp'n to Mot. J. Agency R. at 14.  Torrington asserts that there is a distinction between "zero-price samples" given to the United States customer and transactions unsupported by consideration, which may come in different forms.  In the alternative, Torrington argues SKF failed to provide sufficient record evidence to demonstrate that the "sample" transactions were

in fact made outside the "ordinary course of trade," as required by statute.  Id. at 15.  Therefore, Torrington argues that Commerce should be affirmed, or that the matter should be remanded to Commerce to obtain additional data regarding the U.S. sample transactions.  Id. at 16.

Commerce is required to impose antidumping duties upon merchandise that "is being, or is likely to be, sold in the United States at less than its fair value."  19 U.S.C. § 1673(1) (1988) (emphasis added).  A sale requires both a transfer of ownership to an unrelated party and consideration.  NSK, 115 F.3d at 975.  In other words, a transaction that involves no consideration is not a sale.  Therefore, the distribution of AFBs for no consideration falls outside the purview of 19 U.S.C. § 1673.  Consequently, the Court remands to Commerce to exclude from SKF's U.S. sales database any transactions that were not supported by consideration, and to adjust the dumping margins accordingly.

## Conclusion

The Court affirms Commerce's determination to apply SKF's positive billing adjustment in its FMV calculations while declining to apply the negative adjustment to FMV.  The Court remands for

Commerce to exclude from SKF's U.S. sales database any transactions

unsupported by consideration.

 

 

 

 
_____
                          NICHOLAS TSOUCALAS
                          SENIOR JUDGE


Dated: June 29, 1999
       New York, New York