Slip Op. 10-78

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |  |
|---|---|---|---|
| MTZ POLYFILMS, LTD., | : | | |
| Plaintiff, | : | | |
| v. | : | | |
| UNITED STATES, | : | Before: | WALLACH, Judge |
| | : | Court No: | 09-00010 |
| Defendant, | : | | |
| and | : | **PUBLIC VERSION** | |
| DUPONT TEIJIN FILMS USA, LP, MITSUBISHI POLYESTER FILM OF AMERICA, LLC, SKC, INC., and TORAY PLASTICS (AMERICA), INC. | : | | |
| Defendant-Intervenors. | : | | |

[Plaintiff's Motion for Judgment on the Agency Record is DENIED and the Agency's Determination is AFFIRMED.]

Dated: July 14, 2010

Riggle & Craven (David J. Craven) for Plaintiff MTZ Polyfilms, Ltd.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David D'Alessandris); and Deborah R. King, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant United States.

Wilmer, Cutler, Pickering, Hale and Dorr, LLP (Ronald I. Meltzer, John D. Greenwald, and Patrick McLain) for Defendant-Intervenors Dupont Teijin Films USA, LP, Mitsubishi Polyester Film, Inc., SKC, Inc., and Toray Plastics (America), Inc.

## OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

Plaintiff MTZ Polyfilms, Ltd. ("MTZ") appears before the court on a motion for

judgment on the agency record pursuant to USCIT Rule 56.2, challenging determinations of the

U.S. Department of Commerce ("Commerce" or the "Department") in Polyethylene

Terephthalate Film, Sheet, and Strip from India: Final Results of Countervailing Duty

Administrative Review, 73 Fed. Reg. 75,672 (December 12, 2008), Public Record ("P.R.") 94

("Final Results").  This court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  Because the

challenged determinations are supported by substantial evidence and in accordance with law,

they are sustained and judgment is entered for Defendant United States ("Defendant").

## II
## BACKGROUND

### A
### Countervailing Duty Overview

"Countervailing duties are imposed on foreign products that are imported, sold, or likely

to be sold in the United States, where the foreign government is directly or indirectly subsidizing

the manufacture, production, or export of that merchandise." Royal Thai Gov't v. United States,

502 F. Supp. 2d 1334, 1339-40 (CIT 2007) (citations omitted).

> They are levied on subsidized imports to offset the unfair competitive advantages
> created by foreign subsidies.  Pursuant to 19 U.S.C. § 1671, [Commerce] must
> impose countervailing duties on subsidized imports if it determines that the
> subject imports are in fact being subsidized, and the International Trade
> Commission determines that an industry in the United States—(i) is materially
> injured, or (ii) is threatened with material injury . . . by reason of the subsidized
> imports.  After the initial determination, Commerce must perform annual reviews
> of outstanding countervailing duty orders.  After Commerce performs an annual

2

review under [19 U.S.C.] § 1675(a), the statute allows an interested party to seek judicial review of the factual findings and legal conclusions of Commerce in the Court of International Trade.

Wolf Shoe Co. v. United States, 141 F.3d 1116, 1117-18 (Fed. Cir. 1998) (citations, footnotes, and internal quotations omitted).

**B**
**The Subject Administrative Review And Preliminary Results**

In 2002, Commerce published a countervailing duty order applying to Polyethylene Terephthalate Film, Sheet, and Strip (collectively, "PET Film") from India. Notice of Countervailing Duty Order: [PET Film] from India, 67 Fed. Reg. 44,179 (July 1, 2002) ("CVD Order").  In response to a July 2007 notice, MTZ that month sought review of the CVD Order for its U.S. sales during the period of review ("POR") covering calendar year 2006. Antidumping or Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to Request Administrative Review, 72 Fed. Reg. 36,420, 36,420 (July 3, 2007), P.R. 1; Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: [PET Film] from India; Request for Administrative Review of the Countervailing Duty Order on Certain PET Film Produced and Exported by MTZ . . . During the [POR], January 1, 2006 to December 31, 2006 (July 30, 2007), P.R. 2.

Commerce in August 2007 initiated the administrative review requested by MTZ and in October 2007 issued a questionnaire to MTZ and the Government of India ("GOI"). Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part, 72 Fed. Reg. 48,613, 48,615 (August 24, 2007); Letter from Thomas Gilgunn, Program Manager, AD/CVD Operations, Office 6, U.S. Department of Commerce, to Rupinder Sawhney,

3

Case Officer, Embassy of India, Re: 2006 Countervailing Duty Review: [PET Film] from India (October 5, 2007), P.R. 7 ("Initial Questionnaire").

Commerce issued four supplemental questionnaires to MTZ between April and July 2008. See Letter from Thomas Gilgunn, Program Manager, AD/CVD Operations, Office 6, U.S. Department of Commerce, to MTZ . . . , Re: First Supplemental Questionnaire Concerning the Countervailing Duty Administrative Review of [PET Film] from India (April 11, 2008), P.R. 29, Confidential Record ("C.R.") 2 ("Supp. MTZ Questionnaire"); Letter from Thomas Gilgunn, Program Manager, AD/CVD Operations, Office 6, U.S. Department of Commerce, to MTZ . . . , Re: Second Supplemental Questionnaire Concerning the Countervailing Duty Administrative Review of [PET Film] from India (May 28, 2008), P.R. 38, C.R. 4 ("2d Supp. MTZ Questionnaire"); Letter from Thomas Gilgunn, Program Manager, AD/CVD Operations, Office 6, U.S. Department of Commerce, to MTZ . . . , Re: Fourth Supplemental Questionnaire Concerning the Countervailing Duty Administrative Review of [PET Film] from India (July 11, 2008), P.R. 51 ("4th Supp. MTZ Questionnaire").

MTZ responded to Commerce between December 2007 and July 2008. Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: [PET Film] from India; C-533-825; Response to the Countervailing Duty Questionnaire by MTZ . . . (December 4, 2007), P.R. 15, C.R. 1 ("MTZ Response"); Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: [PET Film] from India; C-533-825; Response to the Countervailing Duty Supplemental Questionnaire by MTZ . . . (May 6, 2008), P.R. 36, C.R. 3 ("MTZ Supp. Response"); Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: [PET Film] from India; C-533-825; Response to the Countervailing Duty 2nd and 3rd Supplemental Questionnaires by MTZ . . . (June 20,

4

2008), P.R. 48, C.R. 6 ("MTZ 2d/3d Supp. Response"); Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: [PET Film] from India; C-533-825; Response to the Countervailing Duty 4th Supplemental Questionnaires by MTZ . . . (July 21, 2008), P.R. 57, C.R. 7 ("MTZ 4th Supp. Response").

In August 2008, Commerce rendered its preliminary determination in the subject administrative review. [PET Film] from India: Preliminary Results of Countervailing Duty Administrative Review, 73 Fed. Reg. 45,956 (August 7, 2008), P.R. 59 ("Preliminary Results"). Commerce preliminarily found the GOI Export Promotion Capital Goods Scheme ("EPCGS") had conferred a countervailable export subsidy. Id. at 45,961-62. EPCGS:

> provides for a reduction or exemption of customs duties and excise taxes on imports of capital goods used in the production of exported products. Under this program, producers pay reduced duty rates on imported capital equipment by committing to earn convertible foreign currency equal to four to five times the value of the capital goods within a period of eight years.

Id. at 45,961.

Commerce preliminarily calculated the benefit received by GOI's formal waiver of import duties for MTZ's capital equipment imports under EPCGS. Id. at 45,962-63. In this calculation, Commerce included the GOI Special Additional Duty ("SAD"). See Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Antidumping and Countervailing Duty Operations, to David M. Spooner, Assistant Secretary for Import Administration, U.S Department of Commerce, Issues and Decision Memorandum in the Final Results of the Countervailing Duty Administrative Review of [PET Film] from India (December 5, 2008), P.R. 91 ("Decision Memo"), at 22-24.

Commerce also preliminary found that the GOI pre-shipment and post-shipment export financing program conferred countervailable export subsidies. Preliminary Results, 73 Fed. Reg.

5

at 45,958. "The Reserve Bank of India (['RBI']), through commercial banks, provides short-term pre-shipment financing, or 'packing credits,' to exporters." Id. These "pre-shipment loans for working capital purposes" and "pre-shipment credit lines . . . to Indian companies must, by law, charge interest rates determined by the RBI." Id. Additionally, "[p]ost-shipment export financing consists of loans in the form of discounted trade bills or advances by commercial banks." Id. Commerce preliminarily found that MTZ benefitted from this program based on questionnaire responses from MTZ and GOI. Id. at 45,959. Commerce explained that, despite the numerous questionnaires, MTZ had not provided the necessary information as follows:

> [T]he Department repeatedly requested that MTZ provide all short-term loans outstanding during the POR, and record evidence indicates that MTZ has failed to provide the Department with reliable and useable information regarding its short-term export financing loans. As a result, the Department does not have the information necessary to calculate a rate for MTZ based on its own information under the pre-shipment and post-shipment program for theses [sic] preliminary results.

Id.

Finding the MTZ loan information for the export financing program to be "incomplete," Commerce preliminarily concluded that "the application of facts otherwise available is warranted" pursuant to 19 U.S.C. § 1677e(a). Id. at 45,960. "Because MTZ failed to cooperate to the best of its ability to comply with the Department's requests for information, an adverse inference" was preliminarily applied to MTZ pursuant to 19 U.S.C. § 1677e(b), resulting in the selection of an adverse facts available ("AFA") rate. Id.

## C
## The Fifth Supplemental Questionnaires, Final Results, And This Litigation

Commerce in August 2008 issued fifth supplemental questionnaires to GOI and MTZ. Letter from Thomas Gilgunn, Program Manager, AD/CVD Operations, Office 6, U.S.

6

Department of Commerce, to MTZ . . . , Fifth Supplemental Questionnaire Concerning the Countervailing Duty Administrative Review of [PET Film] from India (August 15, 2008), P.R. 61, C.R. 9 ("5th Supp. MTZ Questionnaire"); Letter from Thomas Gilgunn, Program Manager, AD/CVD Operations, Office 6, U.S. Department of Commerce, to Anil K. Sharan, Counsellor (Commerce), Government of India, Fifth Supplemental Questionnaire Concerning the Countervailing Duty Administrative Review of [PET Film] from India (August 15, 2008), P.R. 60 ("5th Supp. GOI Questionnaire").

In September 2008, MTZ submitted both its response to the 5th Supp. MTZ Questionnaire and a supplement thereto. Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: [PET Film] from India; C-533-825; Response to the Countervailing Duty 5th Supplemental Questionnaires by MTZ . . . (September 8, 2008), P.R. 69, C.R. 10 ("MTZ 5th Supp. Response"); Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: [PET Film] from India; C-533-825; Supplement to Response to the [MTZ 5th Supp. Response] And Request for Acceptance of Out-of-Time Filing (September 9, 2008), P.R. 71, C.R. 11 ("Supp. to MTZ 5th Supp. Response"). MTZ provided loan data and stated that it had not benefitted from either SAD under EPCGS or the export financing program. See MTZ 5th Supp. Response Att. I at 1-2, 7, Exs. SSSS-1, SSSS-3; Supp. to MTZ 5th Supp. Response Ex. SSSS-2.

Commerce in October 2008 conducted a hearing on the subject administrative review, in accommodation of the MTZ request, and accepted MTZ's administrative case brief.[1] Transcript of Hearing, U.S. Department of Commerce, In the Matter of: The Administrative Review of the

---

[1] Although MTZ originally submitted its administrative case brief in September 2008, Commerce rejected that submission because it contained untimely information and directed MTZ to resubmit. Letter from Barbara E. Tillman, Director, AD/CVD Operations, Office 6, U.S. Department of Commerce, to MTZ . . . , Re: Countervailing Duty Administrative Review on [PET Film] from India (October 8, 2008), P.R. 85.

Countervailing Duty Order on [PET Film] from India, C-533-825 (October 6, 2008), P.R. 83 ("October 6, 2008 Transcript"); Letter from David J. Craven, Riggle & Craven, to Carlos M. Gutierrez, Secretary of Commerce, Re: [PET Film] from India; C-533-825; Request for Hearing (September 8, 2008), P.R. 70; Administrative Brief of MTZ . . . , Case No. C-533-825, U.S. Department of Commerce (October 15, 2008), P.R. 89, C.R. 12 ("MTZ Case Brief").  MTZ challenged, inter alia, the inclusion of SAD in calculating the benefit to MTZ under EPCGS and the application of AFA for the export financing program. MTZ Case Brief at 4-6, 24-30.

In December 2008, Commerce rendered its final determination in the subject administrative review. Final Results, 73 Fed. Reg. 75,672.  Although Commerce made certain revisions to the rate calculations for MTZ, inclusion of SAD in the EPCGS benefit calculation and application of AFA remained from the Preliminary Results. See Memorandum from Elfi Blum, International Trade Compliance Analyst, AD/CVD Operations, Office 6, U.S. Department of Commerce, to The File, Re: Administrative Review of the Countervailing Duty Order on [PET Film] from India, Revisions to the Rate Calculations for MTZ . . . (December 5, 2008), P.R. 93; Decision Memo at 4-14, 41.  Applying AFA, Commerce selected 2.90 percent ad valorem as MTZ's rate for the export financing program. Decision Memo at 10-11, 41.

MTZ commenced this action in early 2009. See Summons (January 9, 2009); Complaint (February 3, 2009).  Defendant-Intervenors Dupont Teijin Films USA, LP, Mitsubishi Polyester Film, Inc., SKC, Inc., and Toray Plastics (America), Inc. (collectively, "Defendant-Intervenors") intervened as a matter of right pursuant to USCIT Rule 24(a).[2] March 10, 2009 Order.  MTZ moved for judgment on the agency record, contesting inclusion of SAD in the EPCGS benefit calculation and application of AFA to the export financing program. Motion for Judgment on the

---

[2] Defendant-Intervenors were the petitioners in underlying administrative review. Decision Memo at 1.

8

Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("MTZ's Motion") at 6-13.

## III
## STANDARD OF REVIEW

Determinations by Commerce resulting from an administrative review of a countervailing duty order will be upheld unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." SKF USA, Inc. v. INA Walzlager Schaeffler KG, 180 F.3d 1370, 1374 (Fed. Cir. 1999) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Aimcor v. United States, 154 F.3d 1375, 1378 (Fed. Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. United States, 750 F.2d 927, 933 (Fed. Cir. 1984)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Matsushita,750 F.2d at 933 (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966)).

In determining the existence of substantial evidence, a reviewing court must consider "the record as a whole, including evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984)). While the court must consider contradictory evidence, "the substantial evidence test does not require that there be an absence of evidence detracting from the agency's conclusion, nor is there an absence of substantial evidence simply because the reviewing court would have reached a different conclusion based on the same record." Cleo Inc. v. United States,

9

501 F.3d 1291, 1296 (Fed. Cir. 2007) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88, 71 S. Ct. 456, 95 L. Ed. 456 (1951)).

To evaluate whether Commerce's interpretation and application of the countervailing duty statute at issue is otherwise "in accordance with law," the court uses a two step analysis that first examines whether Congress has "directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). If this is the case, the court then must "give effect to the unambiguously expressed intent of Congress." Id. at 842-43; see Household Credit Servs. v. Pfennig, 541 U.S. 232, 239, 124 S. Ct. 1741, 158 L. Ed. 2d 450 (2004). If instead Congress has left a "gap" for Commerce to fill, the agency's regulation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 843-44.

## IV
## DISCUSSION

MTZ does not prevail on either of its challenges to the Final Results, because Commerce, lawfully and with the support of substantial evidence, included SAD in calculating the EPCGS benefit conferred on MTZ, infra Part IV.A and applied AFA to MTZ for the export financing program, infra Part IV.B. These Commerce determinations are not invalidated by a verification of MTZ during the prior POR, infra Part IV.C.

## A
## Commerce Properly Included SAD In The Benefit MTZ Received Under EPCGS

MTZ does not challenge Commerce's premise that benefits conferred by EPCGS are countervailable. See Preliminary Results, 73 Fed. Reg. at 45,961-62 ("the Department determined that import duty reductions provided under the EPCGS are a countervailable export subsidy"); MTZ Case Brief at 3-19 (arguing that "The Benefits Received By MTZ Under the

10

ECPGS [sic] Programs Are Grossly Overstated"). MTZ also does not challenge Commerce's stated general approach to calculating the benefit received under EPCGS. See MTZ's Motion at 6-11 (citing Decision Memo at 14). Rather, the sole issue concerning EPCGS is whether Commerce properly included SAD in calculating the benefit MTZ received. See id.

GOI in March 2008 informed Commerce that "[a]ny article which was imported into India was liable to a special additional duty." Letter from Umesh Kumar, Second Secretary (Commerce), Embassy of India, to Secretary of Commerce, Re: First Supplemental Questionnaire Concerning the Countervailing Duty Administrative Review of [PET Film] from India (March 28, 2008), P.R. 26 ("GOI Supp. Response"), at 8. GOI further quoted its 1975 Customs Tariff Act as follows:

> Any article which is imported into India shall . . . be liable to a duty (hereinafter referred to in this section as [SAD]), which shall be levied at a rate to be specified by the Central Government, by notification in the Official Gazette, having regard to the maximum sales tax, local tax or any other charges for the time being leviable on a like article on its sales purchase in India: Provided that until such rate is specified by the Central Government, [SAD] shall be levied and collected at the rate of eight per cent of the value of the article imported into India.

Id.

Based on this GOI information, Commerce preliminarily included the non-collection of SAD in the benefit received by MTZ under EPCGS. See Decision Memo at 22-24. MTZ challenged this decision, contending that SAD "did not apply to the importations made under the license and were not part of the duty foregone by [GOI], and thus the amount of the duty savings for MTZ." MTZ Case Brief at 4-5. MTZ claimed support for this proposition from correspondence from GOI. Id. at 5 (citing Letter from Paul Fernandes, DY Commissioner of Customs, to M/s.MTZ . . . , Foregone of Customs Duty . . . (November 9, 2004), MTZ Case Brief Ex. BR-2, MTZ 5th Supp. Response Ex. SSSS-4(a) ("GOI Customs Duty Foregone

11

Letter")).  According to MTZ, the amount in this document "represents the formal calculation by [GOI] of the amount of duty foregone.  This amount . . . represents the outside limit of the monies that could be recovered by [GOI] in the event that MTZ were to default on fulfilling its export obligation." Id. at 5-6.

Subsequent to the Preliminary Results, Commerce sought clarification about SAD from both GOI and MTZ. 5th Supp. GOI Questionnaire Att. I ¶ 1; 5th Supp. MTZ Questionnaire Att. I ¶¶ 8, 10, 11.[3] MTZ was specifically questioned about two of its EPCGS licenses. 5th Supp. MTZ Questionnaire Att. I ¶¶ 7, 8, 9.  Commerce asked GOI to "[d]escribe the conditions under which MTZ has to pay" SAD. 5th Supp. GOI Questionnaire Att. I ¶ 1.  In response, GOI once more informed Commerce that "[a]ny article which is imported into India is liable to a special additional duty" and again quoted its 1975 Customs Tariff Act that, absent specification by GOI, SAD "shall be levied and collected at the rate of eight per cent of the value of the article imported into India." Letter from Banhashri B Harrison, Minister (Commerce), Embassy of India, to U.S. Department of Commerce, Re: Fifth Supplemental Questionnaire concerning the Countervailing Duty Administrative Review of [PET Film] from India (August 29, 2008), P.R. 65 ("GOI 5th Supp. Response"), at 5.

Commerce asked MTZ to clarify aspects of SAD. 5th Supp. MTZ Questionnaire Att. I ¶¶ 8, 10, 11.  MTZ was instructed to "[d]escribe the conditions under which MTZ has to pay . . . [SAD].  Provide supporting documentation for your response." Id. ¶ 10.  MTZ's response included the following statements:

---

[3] Commerce in these requests also sought clarification about the GOI Additional Duty ("AD") and Education Cess. See 5th Supp. GOI Questionnaire Att. I ¶ 1; 5th Supp. MTZ Questionnaire Att. I ¶¶ 7-11; Decision Memo at 22.  Commerce excluded amounts for AD and Education Cess in calculating the EPCGS benefit, and MTZ agrees with these determinations. See MTZ's Motion at 6 n.1; MTZ Case Brief at 5 n.1; Decision Memo at 22.

- "MTZ did not report any [SADs] for [one EPCGS license] as it was not subject to these duties.  MTZ did report [SADs] for [another EPCGS license].";

- "At the time that the importation under [one EPCGS license] was made into India by MTZ, these [SADs] were not required for this importation.  MTZ was not liable for these duties and made no application . . . to be exempted from these duties as they did not apply."; and

- "The 8% [SAD] referenced by [GOI] in its response was the default rate from the Customs Tariff Act of 1975.  Duty rates and the names of such duty rates change.  The [SAD] for the purchases made under the advance license program was 4% based on rate in effect at the time."

MTZ 5th Supp. Response Att. I at 5-6, 7.

Not persuaded by MTZ's response, Commerce continued to include SAD in its benefit calculation for the Final Results. See Decision Memo at 24. Commerce declined to interpret the GOI Customs Duty Foregone Letter as setting forth the maximum benefit conferred to MTZ under EPCGS. Id.  Instead, Commerce explained that the document "refers to the customs duty foregone only, and not to any other duties levied by the GOI on imports.  Thus, the document issued by the GOI cannot be considered to be representative of all duties foregone by the GOI under this program." Id. Commerce further found MTZ's response to be inadequate as follows:

> MTZ did not explain in its response under what circumstances . . . the SAD . . . appl[ies] to imports to India; MTZ also did not explain or discuss the applicability of the SAD to any other EPCGS license it obtained.  MTZ failed to provide any documentary evidence of its claim that it was not liable for these duties and made no application to be exempted from these duties as they did not apply.  In fact, GOI statements contradict this claim by MTZ. . . .  Therefore, in the absence of any documentary evidence to the contrary, we continue to determine that the SAD applied to all of MTZ's imports under the EPCGS program.

Id.

13

Commerce properly included SAD in calculating the benefit received by MTZ under EPCGS. The repeated and unequivocal GOI statements that the SAD applied to "[a]ny any article which is imported into India" provided a reasonable basis for Commerce to presume inclusion. GOI Supp. Response at 8; GOI 5th Supp. Response at 5. The lone GOI document cited by MTZ indicates only the customs duty foregone. See GOI Customs Duty Foregone Letter; Decision Memo at 24. It "provides only an amount and does not explain how [GOI] calculated the 'duty saved.'" Defendant's Response to Plaintiff's Rule 56.2 Motion for Judgment Upon the Agency Record ("Defendant's Opposition") at 11. MTZ's reliance on the GOI Customs Duty Foregone Letter, see MTZ Motion at 7; October 6, 2008 Transcript at 13, is undercut because the percentage of the duty saved that the letter sets forth is greater than that asserted by MTZ as the percentage comprising all GOI duties foregone. Compare GOI Customs Duty Foregone Letter (stating a "Duty Saved" that is approximately 38 percent of the "CIF Value" stated) with MTZ Response Ex. 12 (asserting that 35 percent is the "Duty Rate Absent the [EPCGS] Program"); see October 6, 2008 Transcript at 13. For these reasons, Commerce was not required to construe the GOI Customs Duty Foregone Letter as conclusively establishing the inapplicability of SAD.[4]

---

[4] MTZ attempts to draw support from the amount identified on an MTZ table labeled "Statement of Goods Imported Under [an EPCGS license]" comporting with the amount identified on the GOI Customs Duty Foregone Letter. MTZ Supp. Response Ex. S-9 at 19; see MTZ Motion at 7-8; October 6, 2008 Transcript at 13. MTZ maintains that these documents "clearly and unequivocally state the amount of the duty." MTZ's Motion at 7. However, MTZ's restatement of an amount of customs duty foregone by GOI does not set that amount as representing all duties foregone by GOI under EPCGS, see Decision Memo at 24, particularly where the amount on both documents exceeds the percentage MTZ claims is the maximum of all GOI duties foregone, see MTZ Response Ex. 12; GOI Customs Duty Foregone Letter; MTZ Supp. Response Ex. S-9 at 19.

MTZ's statements and omissions support Commerce's EPCGS benefit calculation. When asked after the <u>Preliminary Results</u> to clarify SAD,[5] MTZ not only confirmed the general applicability of SAD, but provided inconsistent statements about both the SAD percentage and whether SAD applied to MTZ. <u>See</u> MTZ 5th Supp. Response Att. I at 5-6, 7.  MTZ in fact conceded the applicability of SAD, although not the percent. <u>See</u> <u>id.</u> Att. I at 7.  Moreover, MTZ did not include any record support despite being asked to "provide supporting documentation for your response." 5th Supp. MTZ Questionnaire Att. I ¶ 10; <u>see</u> MTZ's 5th Supp. Response Att. I at 5-8.  Without such evidence, MTZ did not rebut the presumption of SAD applicability based on the GOI responses,[6] and it did not support its claim that "[t]here was no evidence that this was an unpaid duty under the license," MTZ's Motion at 10.  Defendant-Intervenors are correct that MTZ "fails to cite any GOI laws or regulations showing this to be the case, or, at a minimum, to explain how a duty applicable to 'any article . . . at a specified rate' did not apply to the capital goods MTZ imported under the license." Memorandum in Opposition to Plaintiff's Motion for Judgment on the Agency Record Pursuant to Rule 56.2 by Defendant-Intervenors . . . at 7 (quoting GOI Supp. Response at 8) (emphasis removed).

These GOI and MTZ statements about SAD provide "such relevant evidence as a reasonable mind might accept as adequate to support" Commerce's calculation of the benefit MTZ received under EPCGS. <u>Aimcor</u>, 154 F.3d at 1378 (quoting <u>Matsushita</u>, 750 F.2d at 933).

[5] MTZ argues that Commerce did not afford MTZ an "opportunity to 'explain' why this duty did not apply to MTZ . . .  [because] the questions asked were not as straightforward as suggested by the Department and were asking for very old information." MTZ's Motion at 9 n.3.  However, given the <u>Preliminary Results</u> EPCGS benefit calculation, it should have been clear that MTZ was being afforded the opportunity to challenge Commerce's position about SAD. <u>See</u> MTZ Case Brief at 4; 5th Supp. MTZ Questionnaire Att. I ¶¶ 8, 10, 11.

[6] MTZ attempts to shift the burden of proof by claiming that "[e]ven assuming that this duty was due and was not paid by MTZ, which fact was not established on the record, there is no showing that this duty was not collected pursuant to the EPCGS program." MTZ's Motion at 9.  However, given the repeated and unequivocal GOI responses about SAD applicability, Commerce correctly placed the burden on MTZ to establish inapplicability. <u>See</u> GOI Supp. Response at 8-9; GOI 5th Supp. Response at 5-6.

That Commerce could have alternatively construed the GOI Customs Duty Foregone Letter as

supporting the exclusion of SAD does not negate support of the calculation by substantial

evidence. See Cleo, 501 F.3d at 1296 (citing Universal Camera, 340 U.S. at 487-88).

**B**
**Commerce Properly Applied AFA To MTZ**

**1**
**AFA Overview**

Commerce is permitted in certain circumstances to render determinations through the

application of AFA. 19 U.S.C. § 1677e. The statute provides in relevant part as follows:

(a) In general. If—
   (1) necessary information is not available on the record, or
   (2) an interested party or any other person—
      (A) withholds information that has been requested by the administering
      authority . . . under this title,
      (B) fails to provide such information by the deadlines for submission of the
      information . . . ,
      (C) significantly impedes a proceeding . . . , or
      (D) provides such information but the information cannot be verified . . . , the
      administering authority . . . shall . . . use the facts otherwise available in reaching
      the applicable determination . . . .
(b) Adverse inferences. If the administering authority . . . finds that an interested
party has failed to cooperate by not acting to the best of its ability to comply with a
request for information from the administering authority . . . , the administering
authority . . . , in reaching the applicable determination under this title, may use an
inference that is adverse to the interests of that party in selecting from among the
facts otherwise available.

Id.

Nippon Steel Corp. v. United States, 337 F.3d 1373 (Fed. Cir. 2003), clarifies this statute.

There, the Federal Circuit explained that the adverse-inference provision focuses on the

> respondent's failure to cooperate to the best of its ability, not its failure to provide
> requested information. . . . To conclude that an importer has not cooperated to the
> best of its ability and to draw an adverse inference under section 1677e(b),
> Commerce need only make two showings. First, it must make an objective
> showing that a reasonable and responsible importer would have known that the

16

requested information was required to be kept and maintained under the applicable statutes, rules, and regulations. Second, Commerce must then make a subjective showing that the respondent under investigation not only has failed to promptly produce the requested information, but further that the failure to fully respond is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records. An adverse inference may not be drawn merely from a failure to respond, but only under circumstances in which it is reasonable for Commerce to expect that more forthcoming responses should have been made; i.e., under circumstances in which it is reasonable to conclude that less than full cooperation has been shown. While intentional conduct, such as deliberate concealment or inaccurate reporting, surely evinces a failure to cooperate, the statute does not contain an intent element. "Inadequate inquiries" may suffice. The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent.

Id. at 1381-83 (citation omitted) (emphasis removed).

Commerce is by statute afforded discretion in applying adverse inferences. See 19 U.S.C. § 1677e(b). "Commerce's special expertise in administering the anti-dumping law entitles its decisions to deference from the courts." Nippon Steel, 337 F.3d at 1379 (citations omitted). "Commerce's discretion is particularly great in the case of uncooperative respondents. . . . 'Commerce's discretion in these matters, however, is not unbounded.'" Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1323 (Fed. Cir. 2010) (quoting F.lli De Cecco De Filippo Fara S. Martino S.p.A. v. United States [sic], 216 F.3d 1027, 1032 (Fed. Cir. 2000)).

**2**
**Commerce's Requests For Loan Information And MTZ's Responses**

Commerce initially explained that it had previously "found the Pre-Shipment & Post-Shipment Export Financing program to be countervailable" and that it was "not going to reevaulate the countervailability [of] this program." Initial Questionnaire at II-3, III-6. "The Department normally determines the benefit conferred by the pre-shipment and post-shipment

17

loans as the difference between the amount of interest the company paid on the loan and the amount of interest it would have paid on a comparable commercial loan during the POR." Preliminary Results, 73 Fed. Reg. at 45,960. Accordingly, Commerce asked MTZ for detailed information about "each pre and post-shipment loan." Initial Questionnaire at III-7, III-19, III-24-26. This request included the following program description: "[RBI], through commercial banks, provides pre-shipment financing or 'packing credits,' to exporters. Post-shipment export financing consists of loans in the form of discounted trade bills or advance by commercial banks." Id. at III-6.

MTZ informed Commerce that it had obtained packing credits in 2005, through which "MTZ pays a lower rate of interest as applicable on foreign currency than for other short term borrowings." MTZ Response at III-12. This response continued that although:

> MTZ believes that this is not the program referenced [by Commerce], as MTZ does not borrow the money from [RBI] and as MTZ's rates are at a rate exceeding that of LIBOR, for purposes of completeness, MTZ is supplying a response. In 2006, MTZ did not receive any packing credits. Accordingly, no data is supplied and no further response is necessary with respect to this program.

Id.[7]

Commerce asked MTZ follow-up questions concerning the export financing program. Supp. MTZ Questionnaire Att. I at 2. Specifically, MTZ was asked to "describe the process and procedure MTZ followed to apply for the packing credits" referenced in its initial response, submit the "documentation MTZ needed to provide to the bank to obtain those credits," and "[c]larify whether MTZ utilized any packing credits, i.e., working capital loans or lines of credit,

---

[7] The repeated qualification by MTZ that its advance was at rates above the London Inter-Bank Offer Rate ("LIBOR"), MTZ Response at III-12; MTZ Supp. Response Att. I at 6, is inapposite because the export financing program's ceiling interest rate is not connected to LIBOR. See Letter from Anil K. Sharan, Counsellor (Commerce), Embassy of India, to U.S. Department of Commerce, Re: Third Supplemental Questionnaire Concerning the Countervailing Duty Administrative Review of [PET Film] from India (June 10, 2008), P.R. 44 ("3d Supp. GOI Response"), at 4.

or any post-shipment loans, such as discounted trade bills or advances by commercial banks, during the [POR]." Id. MTZ in response submitted a document indicating that it received a packing credit in 2006, MTZ Supp. Response Att. I at 5, Ex. S-5, and reiterated its position as follows:

> MTZ believes that this is not the Pre- and Post- Shipment export financing program identified by the Department as MTZ does not borrow this money from [RBI]. . . . The term "packing credits" have previously been defined by the Department as being those credits which were expressly provided by [RBI]. . . . MTZ did obtain an advance on certain of its invoices, but did so through its banks at interest rates which were in excess of LIBOR.

MTZ Supp. Response Att. I at 5-6.

Commerce once again asked MTZ for information concerning "all pre-and post-shipment loans received during the POR from private commercial banks, or semi-private commercial banks, as well as any government owned entity." 2d Supp. MTZ Questionnaire Att. I at 3. Commerce this time provided a form for MTZ to report the information. Id. Att. I at 3, Att. II. MTZ in turn informed Commerce that "MTZ is unable to provide further information as the information is not maintained, if at all, in a form which would permit the extraction of the data in the form requested by the Department." MTZ 2d/3d Supp. Response at SS-1-2. MTZ did direct Commerce to an attached exhibit in response to the request for documentation. Id. at SS-5, Ex. SS-1. However, that exhibit was not provided. See Preliminary Results, 73 Fed. Reg at 45,959.

Commerce subsequently requested MTZ provide both the missing exhibit and complete loan information. 4th Supp. MTZ Questionnaire Att. I ¶¶ 1, 2. Furthermore, Commerce included a warning that failure to comply could result in the application of AFA to MTZ:

> As previously requested in the original questionnaire, the first supplemental questionnaire, and the second supplemental questionnaire, for each short-term loan outstanding during the POR, provide the name of the lending institution, the purpose of the loan, the amount, the interest rate, the interest paid, the date of

receipt, and the date of payment.  In addition, in a separate spreadsheet, list again all short-term loans utilized for pre- or post-shipment export financing, respectively. . . .  Failure to provide this information to the Department may require the Department to base its findings on the facts available with an adverse inference.

Id. Att. I ¶ 2 (emphasis added).

In response, MTZ provided Commerce with two spreadsheets of 2006 loan information titled "Short-Term Interest Bench Mark" and "Pre and Post Shipment Export Financing," respectively.  Id. Exs. SSS-1(a)(i), SSS-1(a)(ii).  The spreadsheets were devoid of "any descriptions or explanation of the loan data."  Preliminary Results, 73 Fed. Reg. at 45,959; see MTZ 4th Supp. Response Att. I at 1-2.  MTZ doubted the relevance of this information as follows:

> MTZ notes that there have been no changes in the nature of any short term loans obtained by MTZ since the prior POR.  MTZ further notes that the Department examined and verified these short term loans in the most immediate prior review and determined that they did not constitute a countervailable subsidy. . . . Accordingly, MTZ questions the relevance of questions seeking information relating to loans previously found not to constitute a countervailable subsidy.

MTZ 4th Supp. Response Att. I at 1.

Based upon MTZ's unwillingness to provide complete loan information despite numerous requests, Commerce preliminarily applied AFA to MTZ for the export financing program. Preliminary Results, 73 Fed. Reg. at 45,960-61.  Commerce thereafter once more asked MTZ to "provide all short-term loans MTZ has outstanding during the POR in the format requested . . . .  Report those loans in separate spreadsheets for benchmarks, pre-shipment financing and post-shipment financing." 5th Supp. MTZ Questionnaire Att. I ¶ 1.  Because Commerce could not locate the 2006 packing credit indicated by the MTZ Supp. Response on the spreadsheets of 2006 loan data in the MTZ 4th Supp. Response, Preliminary Results, 73 Fed.

20

Reg. at 45,960, it asked MTZ to "reconcile" those responses and to connect "all loan information and documentation . . . to MTZ's financial statements," 5th Supp. MTZ Questionnaire Att. I ¶ 2.

MTZ in response provided Commerce with documents including "a listing of all bank borrowings during the POR." MTZ 5th Supp. Response Att. I at 1, Ex. SSSS-1.  MTZ further submitted a table entitled "[r]econciliation" that listed its 2006 loans by category and bank, id. Ex. SSSS-3, as well as "the ledger sheets for all of MTZ's customers for which MTZ either obtained packing credits from Banks or rediscounted certain invoices." Supp. to MTZ 5th Supp. Response at 1, Ex. SSSS-2.[8] Commerce characterized MTZ's final submission and its deficiencies as follows:

> MTZ provided a reconciliation of type of loan totals by bank to a listing of schedule totals that form part of MTZ's balance sheet. . . .  MTZ provided the Department with customer specific ledger vouchers for various bank transactions with various banks. . . .  MTZ did not provide the complete loan information for the loan reported in [MTZ Supp. Response Ex. S-5], nor did MTZ reconcile that loan to a short-term loan listing in the format as requested by the Department in its [5th Supp. MTZ Questionnaire].

Decision Memo at 7 (emphasis added).

**3**
**The AFA Application Is Supported By Substantial Evidence**

The multiple Commerce requests and evasive MTZ responses demonstrate that MTZ withheld requested information and "failed to cooperate by not acting to the best of its ability to comply" with the requests. 19 U.S.C. § 1677e(a)-(b); see Decision Memo at 8-10; supra Part IV.B.2.  Commerce repeatedly sought the same loan information from MTZ because, despite the clear initial description from Commerce, MTZ apparently misunderstood the export financing

---

[8] This exhibit was not included in the MTZ 5th Supp. Response but was accepted despite being untimely. See Supp. to MTZ 5th Supp. Response at 1-3.

program as requiring loans from RBI.[9] See Initial Questionnaire at III-6-7; MTZ Response at III-12; Supp. MTZ Questionnaire Att. I at 2; Decision Memo at 8-9. MTZ reiterated its position that only RBI loans were relevant, conceded that it "did obtain an advance on certain of its invoices," and submitted a document showing receipt of a packing credit during the POR. MTZ Supp. Response Att. I at 5-6, Ex. S-5. This reasonably led Commerce to believe MTZ both participated in the program during the POR and was not cooperative in providing the information needed to ascertain the benefits conferred. See Decision Memo at 9; Defendant's Opposition at 13-14.

Commerce then again asked MTZ for all loan information relevant to the program during the POR, and provided a specific format. 2d Supp. MTZ Questionnaire Att. I at 3, Att. II. MTZ informed Commerce that it could not comply with the requested format and referred Commerce to a missing exhibit. MTZ 2d/3d Response at SS-1-2, SS-5; Decision Memo at 6. Commerce thereafter asked MTZ for the missing exhibit and explicitly warned MTZ that its failure to provide the requested complete loan information could result in the application of AFA. 4th Supp. MTZ Questionnaire Att. I ¶¶ 1, 2. Although MTZ submitted spreadsheets of loan data, it did not provide the particular exhibit requested by Commerce. See MTZ 4th Supp. Response Att. I at 1. Moreover, Commerce "was unable to reconcile" the MTZ 4th Supp. Response data with MTZ Supp. Response Ex. S-5. Decision Memo at 7. Commerce therefore properly made the preliminarily finding that AFA application was warranted based on MTZ's inadequate responses. See Preliminary Results, 73 Fed. Reg. at 45,960-61.

_____

[9] Despite being corrected by Commerce, MTZ persisted in its characterization of the program. See MTZ Case Brief at 24-25 ("any of the 'packing credits' obtained by MTZ were obtained from Independent Banks and not from [RBI]."). As explained by GOI, "RBI fixes the ceiling rate of interest for export credit. . . . RBI has not prescribed any application process or application form for Export Credit program. Commercial banks directly administer the program in accordance with their own procedures." GOI Supp. Response at 15. "The Department has not, in this administrative review or any prior segment under this [CVD Order] defined pre-shipment and post-shipment loans under this program as short-term loans obtained by a respondent from the RBI." Preliminary Results, 73 Fed. Reg. at 45,959.

MTZ did not take advantage of the final opportunity from Commerce to avoid AFA. See 5th MTZ Supp. Questionnaire Att. I ¶ 1. Although MTZ did submit a large amount of loan data, once again these data were neither in the requested format nor accompanied by meaningful explanation.[10] See MTZ 5th Supp. Response Att. I at 1, Exs. SSSS-1, SSSS-3, SSSS-5; Supp. to MTZ 5th Supp. Response Ex. SSSS-2; Decision Memo at 7. MTZ further failed to correlate the 2006 packing credit indicated in a previous submission with the loan data as expressly—and reasonably—requested by Commerce. See 5th Supp. MTZ Questionnaire Att. I ¶¶ 2-3; Decision Memo at 7; MTZ Supp. Response Att. I at 5, Ex. S-5; MTZ 4th Supp. Response Exs. SSS-1(a)(i), SSS-1(a)(ii). Instead, MTZ replied that Commerce's reconciliation "questions are of no moment." MTZ 5th Supp. Response Att. I at 2. Commerce analyzed the data contained in MTZ's final submission and reasonably concluded that "the Department was still unable to reconcile the loan information from" the earlier submissions.[11] Decision Memo at 7.

These exchanges provide "such relevant evidence as a reasonable mind might accept as adequate to support" Commerce's conclusion that MTZ withheld requested information and "failed to cooperate by not acting to the best of its ability to comply," 19 U.S.C. § 1677e. Aimcor, 154 F.3d at 1378 (quoting Matsushita, 750 F.2d at 933). Commerce accurately recapped its back-and-forth with MTZ and articulated the bases for applying AFA as follows:

> [T]he Department asked MTZ to provide the requested pre-shipment and post-shipment export financing loan information on four separate occasions prior to the

---

[10] MTZ maintains that its final submission of loan data proves that "MTZ paid commercial interest rates for any of the 'packing credits' that it obtained and did not pay preferential rates under a [RBI] program." MTZ's Motion at 13; see also MTZ Case Brief at 24-25. This conclusory statement is unpersuasive; without any correlation of the large amount of loan data with the packing credit program, Commerce correctly found MTZ's data to be incomplete and unclear. See Decision Memo at 9.

[11] At oral argument, MTZ's counsel was provided with another opportunity to reconcile the 2006 packing credit indicated on MTZ Supp. Response Ex. S-5 with the loan data included as exhibits to 5th Supp. MTZ Response. June 29, 2010 Oral Argument at 5:30-6:15. After reviewing the pertinent exhibits provided by Defendant's counsel, id. at 9:50-15:15, MTZ's counsel was unable to do so, id. at 15:16-30.

Preliminary Results, and another time after the Preliminary Results yet, the information on the record remains incomplete. Not only did MTZ fail to reconcile its individual short-term loans reported as benchmarks and those obtained for the pre-shipment and post-shipment export financing, but it also failed to reconcile the short-term loan reported in [MTZ Supp. Response Ex. S-5]. Thus, without this reconciliation, the extent to which the reported data is incomplete remains unclear. Because MTZ failed to provide all the information requested by the Department, and MTZ's failure to provide this loan information within the established deadlines impeded our review, we find that the application of facts otherwise available is warranted . . . .

Because MTZ failed to cooperate to the best of its ability to comply with the Department's requests for the loan information, the Department has determined that an adverse inference . . . is warranted. Accordingly, the Department is making an adverse inference that MTZ benefitted from this program during the POR . . . .

Decision Memo at 9-10 (citations omitted).

Commerce satisfied the objective and subjective showings necessary to apply AFA pursuant to Nippon Steel, 337 F.3d at 1382-83. Given Commerce's position carried over from the previous review that the program was countervailable, see Initial Questionnaire at III-6, "a reasonable and responsible [exporter] would have known that the requested information was required to be kept and maintained," Nippon Steel, 337 F.3d at 1382. Commerce repeatedly and specifically requested the information from MTZ—both before and after the warning about, and preliminary application of, AFA. See 2d Supp. MTZ Questionnaire Att. I at 3, Att. II; 4th Supp. MTZ Questionnaire Att. I ¶¶ 1, 2; Preliminary Results, 73 Fed. Reg. at 45,958-61; 5th Supp. MTZ Questionnaire, Att. I ¶ 1; see generally supra Part IV.B.2. Thus, MTZ's "failure to fully respond is the result of the respondent's lack of cooperation in . . . failing to put forth its maximum efforts to investigate and obtain the requested information from its records." Nippon

24

Steel, 337 F.3d at 1383. The application of AFA to MTZ for the export financing program is supported by substantial evidence. See 19 U.S.C. § 1516a(b)(1)(B)(i).[12]

## C
## Commerce's Previous Verification Does Not Invalidate The Subject Determinations

## 1
## MTZ's Arguments Based On The Previous Verification

MTZ relies in part on a verification in the previous POR to support its challenges in the instant POR relating to both ECPGS and the export financing program. See MTZ's Motion at 8-13; MTZ Case Brief at 6, 24. Commerce in September 2007 conducted a verification of MTZ as part of the previous review of the CVD Order, covering the calendar year 2005 POR. See Memorandum from Elfi Blum & Toni Page, International Trade Compliance Analysts, to Thomas Gilgunn, Program Manager, AD/CVD Operations, Office 6, U.S. Department of Commerce, Countervailing Duty Administrative Review of . . . PET[] Film from India, Verification of the Questionnaire Responses Submitted by MTZ . . . (December 7, 2007), MTZ 5th Supp. Response Ex. SSSS-4(d), MTZ Case Brief Ex. BR-5 ("Verification Report"); [PET Film] from India: Preliminary Results and Rescission, in Part, of Countervailing Duty Administrative Review, 72 Fed. Reg. 43,607 (August 6, 2007).

During that verification, Commerce "discussed MTZ's usage of the EPCGS program with company representatives." Verification Report at 10. Commerce reviewed the two MTZ EPCGS licenses at issue in the 2006 POR CVD Order review. Id.; MTZ 5th Supp. Response Att. I at 5-6. Commerce at that time "requested and MTZ provided information on the duty rates the

---

[12] MTZ challenges only Commerce's application of AFA as opposed to the rate itself. See MTZ's Motion at 11-13. Commerce selected the 2.90 percent ad valorem AFA rate for MTZ "because it was calculated for the same program (Pre-Shipment and Post-Shipment Export Financing) and in the same proceeding, PET film from India." Decision Memo at 11. These features, inter alia, distinguish the 2.90 percent AFA rate here from the 57.64 percent AFA rate struck down by the Federal Circuit in Gallant Ocean, 602 F.3d 1319.

company would have paid absent the program." Verification Report at 10. MTZ claims that Commerce's acceptance of the information provided at that time "establishes . . . the correct amount . . . for duty foregone by [GOI] and saved by MTZ. This, in turn, represents the upper limit of the EPCGS benefit." MTZ's Motion at 9.

Commerce did not address the prior review verification in rendering the Final Results. See Decision Memo at 1, 11-14. MTZ contends that "Commerce did not make any explanation for its change from its prior decision." MTZ's Motion at 11. According to MTZ, Commerce erred because the Decision Memo "is silent on the impact of the verification and silent as to any reasons why Commerce changed its calculation from the prior review to this review." Id.

During that verification, Commerce also established that MTZ did not receive benefits under the export financing program during the 2005 POR. See Memorandum from Stephen J. Claeys, Deputy Assistant Secretary for Import Administration, to David M. Spooner, Assistant Secretary for Import Administration, U.S. Department of Commerce, Issues and Decision Memorandum in the Final Results of the Countervailing Duty Administrative Review of [PET Film] from India (February 4, 2008) at 6, MTZ 5th Supp. Response Ex. SSSS-3. MTZ contends that this finding as to the 2005 POR demonstrates that MTZ did not receive benefits under the program in the 2006 POR. See MTZ 5th Supp. Response Att. I at 1-2 (citing Verification Report); MTZ's Motion at 11-13.

**2**
**Commerce Sufficiently Explained Its Bases For The Challenged Determinations**

"MTZ does not disagree with the basic statement of law," Plaintiff's Reply to Responses Submitted by the Defendant and Defendant-Intervenors to Plaintiff's Motion for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the United States Court of

26

International Trade ("MTZ's Reply") at 3, "that the Department has the authority to reach a differing determination in separate reviews," id. at 4. MTZ recognizes that Commerce can collect new information and reach a different determination in the 2006 POR than in the prior POR that included verification. See MTZ's Motion at 8 n.2 (MTZ stating that an Education Cess exemption was properly excluded from the EPCGS benefit calculation for the 2006 POR despite its inclusion in the 2005 POR); Decision Memo at 22. Defendant is correct that prior POR determinations are "not at issue in this dispute." Defendant's Motion at 12, 20 ("Whether or not Commerce found that MTZ benefitted from [the export financing] program based upon different shipments of subject merchandise and different loans in a prior review is not relevant to whether Commerce properly determined that MTZ received packing credits on shipments of subject merchandise in this [POR].")

Precedent from this court establishes that "Commerce may adapt its views and practices to the particular circumstances of the case at hand, so long as the agency's decisions are explained and supported by substantial evidence on the record." Save Domestic Oil, Inc. v. United States, 26 CIT 1380, 1395, 240 F. Supp. 2d 1342 (2002) (citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 42-43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983); Asociacion Colombiana de Exportadores de Flores v. United States, 22 CIT 173, 184-85, 6 F. Supp. 2d 865 (1998)), aff'd 357 F.3d 1278 (Fed. Cir. 2004). The Federal Circuit instructs that "if Commerce has a routine practice for addressing like situations, it must either apply that practice or provide a reasonable explanation as to why it departs therefrom." Save Domestic Oil, 357 F.3d at 1283-84 (citing Motor Vehicle Mfrs., 463 U.S. at 42-43).

Commerce's not having addressed the 2005 CVD Order verification in the Decision Memo does not invalidate the challenged determinations. The one-time, record-specific

27

verification of MTZ's EPCGS benefit and export credit financing program participation (or lack thereof) from the prior POR does not approximate "a routine practice" obligating Commerce to justify its "depart[ure] therefrom," Save Domestic Oil, 357 F.3d at 1283-84. The verification not being addressed here is therefore distinguishable from the cases where Commerce was required to explain its reversal. See, e.g., CINSA, S.A. de C.V. v. United States, 21 CIT 341, 347, 349, 966 F. Supp. 1230 (1997) (plaintiff provided information that was "exactly the same for the previous three administrative reviews" and Commerce improperly "change[d] its methodology without explanation.").[13]

MTZ's reliance on the previous CVD Order review "is misplaced. Even assuming Commerce's determinations at issue are factually identical, as a matter of law a prior administrative determination is not binding on other reviews before this court." Alloy Piping Prods., Inc. v. United States, Slip Op. 09-29, 2009 WL 983078, at *6 (CIT April 14, 2009) (holding that Commerce properly granted a constructed export price offset to a respondent despite not having done so in the previous administrative review). The challenged determinations here need only be supported by substantial evidence and in accordance with law. See 19 U.S.C. § 1516a(b)(1)(B)(i). This standard is satisfied. Supra Parts IV.A, IV.B.3.

**V**
**CONCLUSION**

For the above stated reasons, Plaintiff MTZ Polyfilms, Ltd.'s Motion for Judgment on the Agency Record Submitted Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade is DENIED and Commerce's determinations in Polyethylene Terephthalate Film, Sheet,

---

[13] MTZ's attempt to rely on CINSA and other precedent from this court is unpersuasive because MTZ does not argue, let alone demonstrate, that "Commerce has a routine practice for addressing like situations." Save Domestic Oil, 357 F.3d at 1283; see MTZ's Reply at 4-8.

28

and Strip from India: Final Results of Countervailing Duty Administrative Review, 73 Fed. Reg.

75,672 (December 12, 2008), are AFFIRMED.


                                              __/s/ Evan J. Wallach____
                                              Evan J. Wallach, Judge


Dated: July 14, 2010
       New York, New York